**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| John Pietsch; Arlan Irwin as Trustee for the Albert and Grace Irwin Trust; Ward County Farm Bureau, a North Dakota Non-Profit Corporation; and Ward County Farmers Union, a North Dakota Non-Profit Corporation, | ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 1:18-cv-00023 |
| Ward County, a Political Subdivision of the State of North Dakota; and the Board of County Commissioners for Ward County, North Dakota, | ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## I.    INTRODUCTION

In exchange for approval of plat applications on property abutting section lines and existing roadways, a Ward County, North Dakota ("Ward County" or the "County"), zoning ordinance mandates that landowners dedicate a predetermined fee-title right of way to the County. See Ward County, N.D., Zoning Ordinance ch. 3, art. 24, § 4(A)(12).[1] The ordinance's apparent purpose is to facilitate road construction and maintenance, but the dedication requirement applies regardless of whether the County demonstrates a need for the right of way for future road projects. As a compounding factor, the exclusive method to avoid dedication forces a landowner to apply for a variance and prove a hardship. And even if a variance is requested, the County need not consider

---

[1] The Court refers to § 4(A)(12) throughout as the "dedication ordinance," the "ordinance," or the "dedication requirement" collectively with related provisions located at Doc. Nos. 43-1 and 43-2. In citations, the Court abbreviates "Ward County, N.D., Zoning Ordinance" to "W.C.Z.O."

the applicant's proposed use of the property or any attendant financial harm resulting from the dedication. At its core, the ordinance appears to imbue Ward County with the authority to take for free what it would otherwise have to pay for through eminent domain. In that sense, the ordinance seems to be an affront to the Takings Clause of the United States Constitution.

But this is not a takings case. Instead, the Plaintiffs have chosen to wield two alternative legal theories—substantive and procedural due process—to vindicate their claims. In a single-count amended complaint invoking 42 U.S.C. § 1983, the Plaintiffs lodge both facial and as-applied constitutional challenges against the dedication ordinance. Doc. No. 30. They seek nominal damages and, much more significantly, an order declaring the ordinance unconstitutional, along with an accompanying permanent injunction barring further enforcement. Now pending are cross motions for summary judgment. Doc. Nos. 40, 42. Because due process is a square peg in a round hole here, the ordinance escapes unscathed.

## II. BACKGROUND

Despite the voluminous record, the facts present as straightforward and uncontested. Prior to addressing the Plaintiffs' claims, a summary of the dedication ordinance is necessary. A brief introduction of the parties and this case's procedural history follows.

### A. The Dedication Ordinance

Outside of incorporated cities, North Dakota has designated 33-foot right-of-way easements for public roads on each side of every section line (for a total of 66 feet) since before statehood. See N.D. Cent. Code § 24-07-03. Counties, as political subdivisions of the state, lack independent authority to construct and maintain roadways unless they create a home-rule charter. See Doc. No. 30, ¶ 18. Ward County has adopted such a charter, so it may "[p]rovide for zoning, planning, and subdivision of public or private property within the county limits but outside the

zoning authority of any city or organized township." N.D. Cent. Code § 11-09.1-05. As a natural extension, the County is permitted to provide for and regulate a county road system, as well as "acquire, hold, operate, and dispose of property within or without the county limits, and exercise the right of eminent domain" for that road system. Ward County, N.D., Home Rule Charter art. 2(a), (f). No one quarrels with the statutory easement mandate or the County's usual eminent domain procedures.

Equally uncontroversial is the North Dakota Century Code provision that spells out the procedure for approval of a subdivision plat. The basic building block says, "No subdivision . . . shall be made . . . except in accordance with a plat as finally approved by the board of county commissioners." N.D. Cent. Code § 11-33.2-12. Before a county commission can approve a plat, though, the county's planning commission and the relevant township get an opportunity to weigh in on the proposal. See id. These recommendations are nonbinding.

Once a plat application works its way up the ladder for final approval, the board of county commissioners is required to consider certain factors. If an applicant satisfies the statutory criteria, the commission must approve the plat—if not, mandatory disapproval follows:

> In determining whether a plat shall be finally approved or disapproved, the board of county commissioners shall inquire into the public use and interest proposed to be served by the subdivision. . . . If it finds that the proposed plat makes appropriate provisions for the public health, safety, and general welfare and for such open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and school grounds, and that the public use and interest will be served by the platting of such subdivision, and that the proposed plat complies with a county resolution, if any, regulating or restricting the subdivision of land, to the extent that such resolution does not conflict with the provisions of this section, such plat shall be finally approved with such conditions as the board of county commissioners may deem necessary. If it finds that the proposed plat does not make appropriate provisions, or that the public use and interest will not be served, or that the proposed plat does not so comply with the aforementioned resolution, then the board of county commissioners shall disapprove the proposed plat. . . .

Id.  The plat approval statute has one final—and critical—sentence, which states, "Dedication of land to any public body may be required as a condition of subdivision approval and shall be clearly shown on the final plat."  Id.  The challenged Ward County ordinance does just that, mandating the dedication of fee-title right of way along section lines and roadways to the County as a condition for outlot and subdivision plat approval.  See W.C.Z.O. ch. 3, art. 24, § 4(A)(12).  For section lines, township roads, frontage roads, and rural subdivision roads, the County requires 40 feet from each side of the center line (for a total of 80 feet); for county roads, 75 feet from each side (for a total of 150 feet).  Id.

The genesis for the expanded dedication requirement came from local engineers and developers informing the County that the 33-foot statutory right of way allotted insufficient space for road construction projects.  Doc. No. 44-5 at 60:11-64:15.  Enacted on April 6, 2010 by the Board of County Commissioners for Ward County ("County Commission")—unanimously and with no opposition during the public comment period—the ordinance's stated purpose largely mirrors the Century Code's requirements for plat approval:

> In order to provide for the proper arrangement of streets in relation to other existing and planned streets, and to the master plan of the City of Minot; to provide for adequate and convenient open spaces, for recreation, for light and air; in order to avoid congestion of population; in order to provide for traffic, for utilities, for access of fire-fighting apparatus; in order to provide for and improve the public health, safety and general welfare of the County of Ward, the following rules and regulations for the [platting] and subdivision of zoned land within the County of Ward are made part of this regulation in accordance with the laws of the State of North Dakota.

W.C.Z.O. ch. 3, art. 24, § 1; see also Doc. No. 46 (audio recording of April 6, 2010 County Commission meeting filed conventionally).  The County Commission does not have to articulate a specific need for right of way when approving a plat application.  Doc. No. 30, ¶ 25.  Rather, the

dedication requirement applies as a matter of course to all subdivision and outlot plats. Doc. No. 44-5 at 87:10-20.

Because of this uniform approach, Ward County has essentially stripped itself of any discretion to approve a subdivision or outlot plat that does not comply with the dedication requirement. <u>See</u> Doc. No. 44-5 at 87:10-20. A landowner therefore has a single path to avoiding dedication—a variance. Doc. No. 44-1 at 20:17-24. The variance process begins with the applicant paying a mandatory $100 application fee. <u>See</u> Doc. No. 44-9. From there, the application passes to the Ward County Planning Commission ("Planning Commission") and the appropriate township for comment. <u>See</u> Doc. No. 30, ¶¶ 47, 51. The variance request is then presented to the County Commission for an up or down vote. <u>Id.</u> ¶ 49. At that point, the County Commission must determine whether the dedication would impose a hardship. <u>See</u> W.C.Z.O. ch. 3, art. 24, § 8(A). The burden to prove a hardship rests with the applicant. Doc. No. 44-6 at 20:12-21. Circumstances constituting a hardship are limited to physical characteristics of the property. Doc. No. 44-1 at 20:17-24. Although in practice the County Commission considers the applicant's proposed use of the property if included with a variance request, it is not required to, and any motion to approve a variance must state the hardship on the property itself. <u>See</u> Doc. Nos. 44-5 at 111:15-112:1; 44-6 at 19:15-22. Purely economic justifications cannot support a hardship variance. Doc. No. 44-1 at 20:17-24.

A few ancillary matters are important to mention at this juncture as well. An appeal process is available for landowners that receive an adverse decision on a plat application, permitting review

by a North Dakota state district court.[2]  W.C.Z.O. ch. 3, art. 24, § 13(C).  North Dakota also recognizes actions for inverse condemnation, through which a landowner can compel compensation for property taken by a government entity.  See Lenertz v. City of Minot, 2019 ND 53, ¶ 10, 923 N.W.2d 479.  And finally, Ward County's dedication ordinance has generated some political opposition.  The Planning Commission, for example, voted in May 2017 to recommend eliminating the additional dedication requirement altogether, leaving only the 33-foot statutory easement requirement in place.  Doc. No. 30, ¶¶ 33-34.  In a June 2017 vote, the County Commission rejected the Planning Commission's recommendation.  Id. ¶ 37.  To date, the dedication ordinance remains intact.  Id. ¶ 38.

### B.     Introduction of Parties

The Plaintiffs are two individuals that refrained from subdividing property because of the dedication ordinance and two non-profit organizations that oppose the ordinance.  The first individual Plaintiff is John Pietsch ("Pietsch"), a farmer residing in Freedom Township within Ward County.  Doc. No. 44-8 at 11:9-16.  Pietsch sought to carve out an approximately 5.3-acre outlot from his existing 143.21-acre property.  Doc. No. 44-7, p. 2.  He intended to use the outlot for a farm shop to store machinery.  Doc. No. 30, ¶ 45.  The proposed outlot would have bordered County Road 18.  Doc. No. 44-8 at 15:16-16:11.  The County had previously offered to purchase right of way from Pietsch for a planned reconstruction of County Road 18, but he declined the offer.  Id. at 51:6-52:18.  When Pietsch later submitted his outlot application, the dedication ordinance kicked in, which called for him to dedicate right of way spanning 75 feet.  See Doc. No.

---

[2] The parties dispute whether an aggrieved landowner is also entitled to a separate review hearing before the County Commission prior to pursuing an appeal in state district court.  See W.C.Z.O. ch. 3, art. 24, § 13(A)(1).  If so, that distinction is immaterial to the resolution of the pending motions.

44-10.  Had Pietsch complied, the County would have obtained right of way, at no cost, to nearly one acre of the proposed 5.3-acre outlot.  <u>See</u> Doc. No. 44-7.  Hoping to avoid that outcome, Pietsch submitted his proposed outlot plat with an accompanying variance request and paid the mandatory $100 application fee.  <u>Id.</u>; Doc. No. 44-9.

The Planning Commission initially recommended approving the variance on April 20, 2017, finding that any property dedicated in excess of the statutory 33-foot right of way would present a hardship for Pietsch.  Doc. No. 44-10, p. 3.  The Freedom Township Planning and Zoning Commission ("Freedom Township Commission") concurred.  Doc. No. 30, ¶ 51.  Both entities then forwarded their nonbinding recommendations to the County Commission.  On May 16, 2017, the County Commission denied the variance request because the physical characteristics of Pietsch's property fell outside the requirements for a hardship.  Doc. No. 44-12, p. 4.  The County Commission did not assess the proposed outlot's transportation-related impact.  Doc. No. 30, ¶ 54.  Pietsch accordingly halted his plans to develop the outlot.  He still desires to create the outlot if he can do so without dedicating the additional right of way to the County.  Doc. No. 44-13.  Pietsch neither appealed the County Commission's denial of his variance application nor instituted an inverse condemnation action.

Arlan Irwin ("Irwin") is the second individual Plaintiff.  He serves as a trustee for the Albert and Grace Irwin Trust ("Trust").  Doc. No. 44-19.  The Trust owns farmland in Freedom Township.  Doc. No. 44-15 at 20:5-12.  Irwin, as trustee, proposed to create two outlots, dubbed Outlot 6 and Outlot 7, from the Trust's total 150.52-acre property.  Doc. No. 44-14, p. 2.  While Irwin had no immediate plans to develop the outlots, he assumed that Outlot 6, an undeveloped 7.48-acre plat, and Outlot 7, an 8.72-acre plat that included a house and some farm-related structures, would be sold for eventual residential use.  <u>Id.</u> at 2-4.  The Planning Commission approved Outlot 7 on

January 19, 2017. Doc. No. 44-16, p. 2. Outlot 6, on the other hand, abutted 191st Avenue Southeast, a minimally improved gravel road that stretches less than 1.6 miles in total and dead ends in two private driveways. Doc. No. 30, ¶ 60. Because the County classified 191st Avenue Southeast as a township road, the ordinance required the dedication of a 40-foot right of way. Id. ¶ 59. At first, Irwin included only the 33-foot statutory right of way in the Trust's plat application for Outlot 6. Doc. No. 44-14, p. 2. The Freedom Township Commission recommended approval of the plat without the additional seven feet of right of way.[3] Doc. No. 30, ¶ 65. The Planning Commission, however, rejected Irwin's application and requested that he either include the 40-foot right of way in an amended plat application or apply for a variance. Doc. No. 44-16, p. 2.

Irwin chose the latter route, submitting a variance application that sought approval of Outlot 6 without the additional right of way. Doc. No. 44-14. Pietsch, who also served as chairman of the Freedom Township Commission at the time, presented the Trust's variance application to the Planning Commission on Irwin's behalf. Doc. No. 44-17, p. 2. Apparently persuaded, the Planning Commission recommended approval of the variance on March 16, 2017, deeming the additional right of way unnecessary because 191st Avenue Southeast was an "extremely low traffic" gravel road not prone to future development concerns. See id.

Notwithstanding the recommendation for approval, the County Commission denied the Trust's plat application on April 4, 2017. Doc. No. 44-18, p. 3. In doing so, the County Commission did not consider the transportation-related impacts that Outlot 6 presented, instead rejecting the variance because the plat failed to meet the County's right of way requirements. See

---

[3] Freedom Township's own zoning ordinance calls for Ward County to state a reason for right of way taken beyond the statutory 33 feet and to provide compensation to all Freedom Township residents subjected to the dedication requirement. Doc. No. 30, ¶ 71. Ultimate authority over the conditions for plat approval rests with the County, so township ordinances lack binding effect in this regard. See N.D. Cent. Code § 11-33.2-12.

id.; Doc. No. 30 ¶¶ 76-78. Irwin's desire remains to create the outlot without dedicating the 40-foot right of way to the County. Doc. No. 44-19, p. 2. Like Pietsch, Irwin did not appeal the County Commission's decision or attempt to obtain compensation through inverse condemnation.[4]

The remaining Plaintiffs, Ward County Farm Bureau ("WCFB") and Ward County Farmers Union ("WCFU"), are two organizations that advocate for farmers' rights and interests in Ward County. Doc. No. 30, ¶¶ 82-83. WCFB represents approximately 1,350 members, and WCFU has roughly 3,000 members. Doc. Nos. 44-21, p. 2; 44-26 at 11:4-6. Pietsch is a member of both organizations. Doc. No. 44-13, p. 2. WCFB's stated purpose is "improving prosperity for all North Dakotans by advocating for our state's largest, renewable, economic sector: agriculture." Doc. No. 44-21, p. 12. WCFB holds as one of its beliefs that "[p]roperty rights are among the human rights essential to the preservation of individual freedom." Id. at 10. WCFU's mission statement proclaims that the organization "is dedicated to promoting quality of life for family farmers and ranchers, educating the community on a broad base of issues and working for the future of agriculture." Doc. No. 44-27. Both organizations have set aside money and time to oppose the dedication ordinance. For instance, WCFB contributed $5,000 in legal fees to oppose the ordinance, while WCFU chipped in $3,500. Doc. Nos. 44-22, p. 10; 44-29, pp. 4, 6. Dan Deaver and Bob Finken, past presidents of WCFB and WCFU, respectively, each engaged in approximately 100 hours of meetings and travel for the opposition effort at the expense of their organizations. Doc. Nos. 44-21, p. 6; 44-28, p. 5. The two organizations also passed resolutions, wrote letters to the County Commission, educated members and the community, and encouraged

---

[4] Realistically, inverse condemnation was never available to Pietsch and Irwin because Ward County did not acquire title to any of their property. See Aasmundstad v. State, 2008 ND 206, ¶ 15, 763 N.W.2d 748 (citations omitted) ("To establish an inverse condemnation claim, a property owner must prove a public entity took or damaged the owner's property. . . .").

attendance at County Commission meetings. See Doc. Nos. 44-21, p. 4; 44-26 at 66:21-68:5. Beyond the costs to the organizations themselves, Ward County has enforced the dedication ordinance against WCFB and WCFU members. See Doc. No. 44-25, p. 5.

### C. Procedural History

The Plaintiffs instituted this action on February 5, 2018. See Doc. No. 1. The complaint seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 for procedural and substantive due process violations, asserting Ward County's dedication ordinance is unconstitutional on its face and as applied. With leave from the Court, the Plaintiffs filed an amended complaint on April 2, 2019 that added a claim for nominal damages flowing from the alleged constitutional violations. See Doc. No. 30. The Defendants filed an answer to the amended complaint on June 5, 2019. Doc. No. 49. Both parties moved for summary judgment on May 1, 2019 and submitted timely response and reply briefs thereafter. Doc. Nos. 42, 44.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 248). Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701,

707 (8th Cir. 2016) (quoting Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014)). "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (citing Anderson, 477 U.S. at 249). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

For a successful § 1983 claim, the Plaintiffs must establish that the Defendants violated rights guaranteed by the Constitution or federal statute while acting under color of state law. Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016). In this action, the Plaintiffs claim the Defendants violated their Fourteenth Amendment[5] substantive and procedural due process rights through enactment and enforcement of the dedication ordinance. Local ordinances adopted under state authority are within the Fourteenth Amendment's reach. See Barnes v. City of Omaha, 574 F.3d 1003, 1005 (8th Cir. 2009). From a remedy perspective, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §

---

[5] The complaint asserts due process claims under both the Fifth and Fourteenth Amendments. But there are no allegations of constitutional violations by the federal government, so the Fifth Amendment Due Process Clause is inapplicable. Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); Truong v. Hassan, 829 F.3d 627, 631 n.4 (8th Cir. 2016) (citations omitted) ("The due process clause of the Fifth Amendment applies only to the federal government.").

2201(a).  Injunctive relief is available when necessary to enforce a declaratory judgment.  See 28 U.S.C. § 2202; Powell v. McCormack, 395 U.S. 486, 499 (1969).

**B.      Facial Versus As-Applied Challenges**

Functionally, the Plaintiffs' objection to the dedication ordinance is twofold because they bring both facial and as-applied challenges.  Though this often-murky distinction normally does not alter the applicable substantive law, it does determine the "breadth of the remedy" available.  Bucklew v. Precythe, 587 U.S. ___, 139 S. Ct. 1112, 1127 (2019) (quoting Citizens United v. FEC, 558 U.S. 310, 331 (2010)).  Illustrating that concept, as-applied challenges are inherently narrow.  They inure when a law's application violates an individual's constitutional rights under the circumstances presented.  See United States v. Adams, 914 F.3d 602, 605 (8th Cir. 2019).  The resulting remedy is likewise narrow, preventing enforcement of the law to the extent necessary to protect the particular challenger's rights—but no further.  See Brakebill v. Jaeger, 932 F.3d 671, 678 (8th Cir. 2019).  Put differently, an as-applied challenge cannot invalidate a law wholesale.  See id.

For that to occur, a winning facial challenge is needed.  As the Supreme Court recently explained, "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications."  Bucklew, 139 S. Ct. at 1127.  To prevail on such a claim, a challenger "must show that there is no set of circumstances under which the law[] would be valid."  Calzone v. Hawley, 866 F.3d 866, 870 (8th Cir. 2017) (citing United States v. Salerno, 481 U.S. 739, 745 (1987)).  When a challenger makes this stouter showing, then the constitutional defect renders the law completely invalid.  "Facial challenges are disfavored" in light of this wide-sweeping result.  Brakebill, 932 F.3d at 677 (citing Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449-51 (2008)).

A careful review of the Plaintiffs' complaint and their briefing on the pending summary judgment motions makes clear that only Pietsch and Irwin bring as-applied claims. The Plaintiffs' memorandum supporting their motion for summary judgment, for instance, mentions WCFB and WCFU only in passing when arguing the as-applied claims. See Doc. No. 44, pp. 28, 31. At the same time, WCFB and WCFU concede that Ward County has not applied the dedication ordinance to either organization's property. Doc. Nos. 44-20 at 11:1-20; 44-26 at 13:9-18. The two organizational Plaintiffs instead seek outright invalidation of the dedication ordinance on behalf of their members. See Doc. No. 44-20 at 17:25-18:6. These are pure facial challenges.

With that baseline, the logical progression for analyzing simultaneous facial and as-applied challenges is to work from narrow to broad. See Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 485 (1989) (explaining that "for reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first"). As a result, when addressing the merits of the Plaintiffs' procedural and substantive due process claims, the Court will first address Pietsch and Irwin's narrower as-applied challenges, and then move to the broader facial challenges.

## IV. **JURISDICTIONAL ISSUES**

Prior to exploring the merits of the Plaintiffs' constitutional claims, however, the Defendants raise several jurisdictional and prudential considerations that demand attention. More specifically, the Defendants contend that all four Plaintiffs lack standing, that the due process claims are not ripe for adjudication, and that abstention doctrine applies. Each argument falls flat.

### A. **Standing**

The Defendants assert that none of the Plaintiffs have standing, thereby divesting the Court of subject matter jurisdiction. "Article III limits federal jurisdiction to 'Cases' and 'Controversies,'

and there is no case or controversy unless the party initiating the action has standing to sue." Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp., 831 F.3d 961, 966 (8th Cir. 2016) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). On a foundational level, standing requires (1) an injury in fact, (2) causation, and (3) redressability. Hughes v. City of Cedar Rapids, 840 F.3d 987, 992 (8th Cir. 2016). Breaking these elements down, an injury in fact is "the actual or imminent invasion of a concrete and particularized legal interest." Kuehl v. Sellner, 887 F.3d 845, 850 (8th Cir. 2018) (quoting Sierra Club v. Kimbell, 623 F.3d 549, 556 (8th Cir. 2010)) (in turn citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). When plaintiffs seek declaratory and injunctive relief, "they must show they are experiencing an ongoing injury or an immediate threat of injury." Webb ex rel. K.S. v. Smith, 936 F.3d 808, 815 (8th Cir. 2019) (citing Frost v. Sioux City, 920 F.3d 1158, 1161 (8th Cir. 2019)). Causation is "a causal connection between the alleged injury and the [defendant's] challenged action." Kuehl, 887 F.3d at 850 (citations omitted). Redressability is "a likelihood that the injury will be redressed by a favorable decision of the court." Id. (citations omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561. With that said, a standing probe cannot become "an assessment of the merits of a plaintiff's claim." Am. Farm Bureau Fed'n v. EPA, 836 F.3d 963, 968 (8th Cir. 2016) (quoting Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1023 (8th Cir. 2012)). Courts must therefore "assume that on the merits the plaintiffs would be successful in their claims" when undertaking a standing analysis. Id. (quoting Muir v. Navy Fed. Credit Union, 529 F.3d 1100, 1106 (D.C. Cir. 2008)).

Applying these principles, the two individual Plaintiffs have standing. The Defendants appear to argue that Pietsch and Irwin lack standing because they cannot establish a § 1983 claim

for violations of their due process rights. This argument improperly conflates the less burdensome standing inquiry with a full-blown analysis of the due process claims' merits. Pietsch and Irwin suffered actual injuries because, as alleged, Ward County effectively prevented them from subdividing their property. See Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 607 (2013) (noting that "the impermissible denial of a governmental benefit is a constitutionally cognizable injury"). Pietsch forewent an opportunity to build a planned farm shop, and Irwin was precluded from selling a portion of the Trust's land for future residential development. And these injuries are ongoing. So long as the dedication ordinance remains on the books, the Plaintiffs will be unable to receive approval for their plat applications, as well as the economic benefits that follow, without dedicating property to the County. They also assert the dedication ordinance is procedurally deficient, enough on its own to create an injury in fact for the procedural due process claims. See Hughes, 840 F.3d at 994 ("The allegation[] that the procedure [for effecting a property deprivation] is inadequate . . . sufficiently establishes an injury in fact for Article III standing."). Added to that, North Dakota law solidifies that the ability to subdivide property is a distinct legal interest. See N.D. Cent. Code § 11-33.2-12.

For the remaining two elements, causation is plainly satisfied because the County's dedication ordinance, and the County Commission's decisions to deny Pietsch and Irwin's plat applications, led directly to the alleged injuries. Redressability is present, too. An order enjoining the dedication ordinance's future enforcement would allow the individual Plaintiffs to pursue their plat applications without the threat of forced property dedication to the County. Pietsch and Irwin meet the elementary requirements for standing.

Whether the two organizational Plaintiffs have standing requires additional consideration. Organizations, like individuals, can possess independent standing subject to the basic three-part

test above.  See ARRM v. Piper, 367 F. Supp. 3d 944, 953 (D. Minn. 2019).  Neither WCFB nor

WCFU alleges that the dedication ordinance has directly impaired the value of their property or

their property rights.  Instead, both organizations claim that their injuries stem from the resources

they have expended in opposing the dedication ordinance.  "Standing may be found when there is

a concrete and demonstrable injury to an organization's activities which drains its resources and is

more than simply a setback to its abstract social interests."  Nat'l Fed'n of the Blind of Mo. v.

Cross, 184 F.3d 973, 979 (8th Cir. 1999) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363,

379 (1982)).  To meet this standard, specific facts must demonstrate a defendant's actions "have

perceptibly impaired" the organization's activities.  Havens Realty Corp., 455 U.S. at 379; see also

Ark. ACORN Fair Hous., Inc. v. Greystone Dev., Ltd. Co., 160 F.3d 433, 434 (8th Cir. 1998).

Expending resources for or in anticipation of litigation is insufficient to confer standing.  See

WaterLegacy v. USDA Forest Serv., Case No. 17-cv-276 (JNE/LIB) et al., 2019 WL 4757663, at

*12 (D. Minn. Sept. 30, 2019) (citing Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 919

(D.C. Cir. 2015)).  Harm that does create standing must impact the organization in a "measurable

way," such as through a reduction in membership or a restriction on the organization's ability to

serve its members.  Cross, 184 F.3d at 980.

WCFB and WCFU collectively allocated approximately $8,500 for legal fees to investigate

and bring the present claims.  These expenditures, however, anticipated the onset of litigation and

so cannot create standing.  Beyond that, leadership from both organizations contributed

approximately 200 hours of time for relevant meetings and travel to oppose the ordinance.  WCFB

and WCFU also provided education to their members and the public in an effort to repeal or amend

the dedication ordinance.  These are no doubt drains on organizational resources.  Even so, WCFB

and WCFU fail to establish how that drain "perceptibly impaired" their activities.  They assert

only that their expenditures of time and money for educational initiatives and efforts to repeal the dedication ordinance could have been put to alternative uses. See Doc. Nos. 44-21, pp. 6-7; 44-28, pp. 5-6. But they neglect to explain "how Defendants' conduct has impaired their ability to advocate on behalf of the populations they serve, or how their missions have been frustrated by the alleged diversion of resources." S.C. ex rel. Melissa C. v. Riverview Gardens Sch. Dist., Case No. 2:18-cv-04162-NKL, 2019 WL 922248, at *2 (W.D. Mo. Feb. 25, 2019).

The Plaintiffs cite to Animal Legal Defense Fund v. Reynolds, 297 F. Supp. 3d 901 (S.D. Iowa 2018), as support for their argument, but that case is distinguishable. There, a district court found an animal rights group had standing because it diverted resources to advocate for the repeal of a law that prohibited gaining access to an agricultural facility through false pretenses. Reynolds, 297 F. Supp. 3d at 916-17. The plaintiff alleged that the law was enacted in response to animal rights groups conducting undercover investigations in agricultural facilities. So the plaintiff was forced to divert resources to advocate for the repeal of a law that restricted its ability to promote animal welfare—a direct threat to its organizational mission. See id. Unlike the law in Reynolds, the dedication ordinance here in no way restricts WCFB or WCFU from advocating for farmers. Nor is there evidence that the two organizations have seen membership dwindle or that their activities have been adversely impacted in any other way. To the contrary, the dedication ordinance is "simply a setback to . . . abstract social interests" that WCFB and WCFU have voluntarily elected to contribute money and time towards. Cross, 184 F.3d at 979. Because the dedication ordinance does not interfere with either WCFB or WCFU's organizational activities, they have not suffered an injury in fact for standing purposes.

This deficiency is not fatal, however. Apart from traditional standing, associational standing permits organizational plaintiffs to assert claims on behalf of their members in limited

circumstances. <u>Midwest Disability Initiative v. JANS Enters., Inc.</u>, 929 F.3d 603, 609 (8th Cir. 2019) (citing <u>Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)). Associational standing is available when "(1) the individual members would have standing to sue in their own right; (2) the organization's purpose relates to the interests being vindicated; and (3) the claims asserted do not require the participation of individual members." <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 645 F.3d 978, 986 (8th Cir. 2011) (citations omitted). An organizational plaintiff "need not establish that all of its members would have standing to sue individually so long as it can show that 'any one of them' would have standing." <u>Iowa League of Cities v. EPA</u>, 711 F.3d 844, 869 (8th Cir. 2013) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 511 (1975)).

The first and second elements are easily met here. Pietsch is a member of both WCFB and WCFU. As explained above, he has standing to sue in his individual capacity. That is enough to satisfy the initial requirement. For the second element, the Defendants concede that WCFB and WCFU's organizational purposes coincide with the interests at stake in this litigation. Doc. No. 50, p. 27. Organizations dedicated to advocating for agriculture certainly have an interest in land-use regulations that predominantly effect farmers such as the challenged dedication ordinance.

More controversial is the third element, which the Defendants contend is the missing ingredient for associational standing. They broadly assert that determining whether the dedication ordinance violated the Fourteenth Amendment Due Process Clause will require the Court to examine how the ordinance has impacted individual members of WCFB and WCFU. But where an organizational plaintiff "seeks only declaratory and prospective injunctive relief, the participation of individual [members] . . . is not required." <u>Heartland Acad. Cmty. Church v. Waddle</u>, 427 F.3d 525, 533 (8th Cir. 2005). To be sure, the outcome would be different if the two

organizations attempted to assert claims for damages on behalf of their members.  See Mo. Prot. & Advocacy Servs., Inc. v. Carnahan, 499 F.3d 803, 810 (8th Cir. 2007).  Those claims would necessitate individualized proof of the dedication ordinance's particular application to each effected landowner, as well as the value of the land dedicated.  That is not the relief the Plaintiffs seek.  A hypothetical trial in this matter could very well require WCFB and WCFU members to testify as witnesses.  That trial would not, however, require those members to participate as parties, meaning proof of individual claims is unnecessary.  See Neb. Beef Producers Comm. v. Neb. Brand Comm., 287 F. Supp. 3d 740, 750 (D. Neb. 2018).  Consequently, WCFB and WCFU possess associational standing to sue on behalf of their members.

**B.**     **Ripeness**

With standing resolved, the next hurdle the Defendants raise is ripeness.  "The issue of ripeness, which has both Article III and prudential components, is one of subject matter jurisdiction."  Dakota, Minn. & E. R.R. Corp. v. South Dakota, 362 F.3d 512, 520 (8th Cir. 2004) (citation omitted).  A general ripeness inquiry looks to "whether the harm asserted has matured enough to warrant judicial intervention."  Parrish v. Dayton, 761 F.3d 873, 875 (8th Cir. 2014) (cleaned up).  The two factors for examination are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Neb. Pub. Power Dist. v. MidAmerican Energy Co., 234 F.3d 1032, 1038 (8th Cir. 2000) (cleaned up).  Mindful of those overarching principles, more specific ripeness standards govern some—but not all—substantive due process claims in the land-use regulation context, as well as procedural due process claims.

Beginning with procedural due process, the usual rule is that "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983."  Wax'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000)

(citations omitted). Unlike remedy exhaustion in other contexts, "this requirement is necessary for a procedural due process claim to be ripe for adjudication." <u>Crooks v. Lynch</u>, 557 F.3d 846, 848 (8th Cir. 2009) (citing <u>Wax'n Works</u>, 213 F.3d at 1020; <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990)). There is an exception, though, based on the manner that an alleged unconstitutional deprivation of property occurs. Namely, "it is not necessary for a litigant to have exhausted available <u>postdeprivation</u> remedies when the litigant contends that he was entitled to <u>predeprivation</u> process." <u>Keating v. Neb. Pub. Power Dist.</u>, 562 F.3d 923, 929 (8th Cir. 2009) (citing <u>Zinermon</u>, 494 U.S. at 132). That is because "the availability of state law postdeprivation remedies bears relevance <u>only</u> where the challenged acts of state officials can be characterized as random and unauthorized." <u>Coleman v. Watt</u>, 40 F.3d 255, 262 (8th Cir. 1994); <u>see also</u> <u>Lathon v. City of St. Louis</u>, 242 F.3d 841, 844 (8th Cir. 2001). Conversely, "when an established state procedure or a foreseeable consequence of such a procedure causes the loss, an adequate postdeprivation remedy is of no consequence." <u>Clark v. Kansas City Mo. Sch. Dist.</u>, 375 F.3d 698, 702 (8th Cir. 2004) (citations omitted).

In this instance, the Defendants argue that Pietsch and Irwin failed to exhaust available state remedies for their as-applied claims because they did not appeal the denial of their plat applications to a North Dakota state district court or attempt to compel compensation through inverse condemnation. But the Plaintiffs contend the dedication ordinance itself—an established procedure—provides inadequate process, not that the Defendants acted randomly or without authority to deprive them of property. The complaint asserts that shifting the burden to landowners to avoid dedicating property by forcing them to apply for a variance, coupled with the narrowly defined standard to obtain such a variance, prevents a meaningful opportunity to be heard. <u>See</u> Doc. No. 30, ¶¶ 104-08. In other words, the Plaintiffs claim the dedication ordinance is

procedurally deficient before any property deprivation occurs. Thus, the Plaintiffs challenge the predeprivation process afforded them, rendering any postdeprivation remedies superfluous for ripeness purposes. Pietsch and Irwin's decision to forego additional state-law remedies does not preclude consideration of their as-applied procedural due process claims.

The same holds true for the substantive due process claims. The Defendants argue that the Plaintiffs' substantive due process claims, both facial and as applied, are an improper attempt to circumvent a similar exhaustion-style ripeness requirement for takings claims. Previously, the Supreme Court held that an action under § 1983 predicated on a takings claim was not ripe (1) "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," commonly referred to as the finality requirement; and (2) "until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation," commonly referred to as the state-litigation requirement. Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 195 (1985), overruled in part by Knick v. Twp. of Scott, 588 U.S. ___, 139 S. Ct. 2162 (2019). Some courts extended Williamson County's heightened ripeness standard in full to substantive due process claims when grounded on underlying facts necessary to sustain a takings claim. See, e.g., John Corp. v. City of Houston, 214 F.3d 573, 582-83 (5th Cir. 2000) (collecting cases). But the Eighth Circuit has required only the finality prong for substantive due process challenges to land-use regulations. See McKenzie v. City of White Hall, 112 F.3d 313, 317 (8th Cir. 1997); Christopher Lake Dev. Co. v. St. Louis Cty., 35 F.3d 1269, 1273 (8th Cir. 1994); see also GBT P'ship v. City of Fargo, No. A3-00-50, 2001 WL 1820144, at *3 (D.N.D. Nov. 27, 2001). Even if the Court were to diverge from the authority in this circuit, the outcome would now remain unchanged. Just two days after briefing

concluded in this case, the Supreme Court overruled <u>Williamson County</u>'s state-litigation requirement for takings claims under § 1983, leaving the finality requirement alone intact. <u>Knick</u>, 139 S. Ct. at 2167. Thus, the Plaintiffs were not required to exhaust any state-law remedies as a prerequisite to pursuing substantive due process claims.

The finality requirement does remain applicable, but only to Pietsch and Irwin's as-applied substantive due process claims. Further paring down the ripeness standard, <u>Williamson County</u>'s finality requirement need not be met for facial challenges to land-use regulations. <u>See</u> <u>San Remo Hotel, L.P. v. City & Cty. of San Francisco</u>, 545 U.S. 323, 345 (2005); <u>Yee v. City of Escondido</u>, 503 U.S. 519, 534 (1992); <u>Clayland Farm Enters., LLC v. Talbot Cty.</u>, 672 F. App'x 240, 244 (4th Cir. 2016); <u>Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach</u>, 727 F.3d 1349, 1359 n.6 (11th Cir. 2013); <u>Opulent Life Church v. City of Holly Springs</u>, 697 F.3d 279, 287 (5th Cir. 2012); <u>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez</u>, 659 F.3d 42, 51-52 (1st Cir. 2011). This makes intuitive sense "because a facial challenge by its nature does not involve a decision applying the statute or regulation." <u>Church v. City of Medina</u>, Civil File No. 11-275 (MJD/FLN), 2012 WL 2395195, at *4 (D. Minn. June 25, 2012) (quoting <u>Hacienda Valley Mobile v. Morgan Hill</u>, 353 F.3d 651, 655 (9th Cir. 2003)). The result is that all four Plaintiffs' facial substantive due process claims are subject to nothing more than general considerations for ripeness.

Turning to the as-applied substantive due process claims, finality is established when the relevant government entity has "arrived at a definite position . . . that inflicted an actual, concrete injury." <u>Christopher Lake Dev. Co.</u>, 35 F.3d at 1273. Here, the County Commission is the government entity tasked with applying Ward County's zoning ordinance. The County Commission arrived at a definite position regarding the application of the dedication ordinance to

Pietsch and Irwin's proposed plats upon denying their plat applications. See Elliott v. Lake Cty., No. CIV 10-04001-RAL, 2010 WL 4553548, at *5 (D.S.D. Nov. 3, 2010) (finding county's denial of permit application was a "definitive position" for ripeness purposes). That action created an actual, concrete injury because it effectively prevented both Plaintiffs from subdividing their property. From that point forward, the available appeal process allowed solely for review of the County Commission's decision—an unneeded avenue of potential relief to satisfy finality. The two individual Plaintiffs' as-applied substantive due process claims therefore clear the finality requirement.

Looping back briefly, the two general ripeness requirements for both the procedural and substantive due process claims are also satisfied. The as-applied claims were sufficiently developed factually, and therefore fit for judicial decision, when Ward County denied Pietsch and Irwin's plat applications. And all the facial claims met this standard as soon as the County Commission enacted the dedication ordinance on April 6, 2010.[6] See Comprehensive Health of Planned Parenthood Great Plains v. Hawley, 903 F.3d 750, 755 (8th Cir. 2018) (stating that "facial challenges to regulation . . . are generally ripe the moment the challenged regulation or ordinance is passed") (quoting Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736 n.10 (1997)). Withholding a court decision on this issue, meanwhile, would do nothing more than unnecessarily prolong the constitutional uncertainty surrounding the ordinance. See McDonald's Corp. v.

---

[6] The facial claims potentially accrued for statute of limitations purposes on April 6, 2010 as well. See, e.g., Hillcrest Prop., LLC v. Pasco Cty., 754 F.3d 1279, 1281-82 (11th Cir. 2014); Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026-27 (9th Cir. 2007); Kuhnle Bros., Inc. v. Cty. of Geauga, 103 F.3d 516, 521-22 (6th Cir. 1997). The Defendants did not raise the statute of limitations in their answer or any subsequent pleadings, operating as a waiver of the defense. See Fed. R. Civ. P. 8(c)(1); Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004).

<u>Nelson</u>, 822 F. Supp. 597, 605 (S.D. Iowa 1993).  The Plaintiffs' substantive and procedural due process claims are accordingly ripe for adjudication.

### C.      Abstention

The Defendants fall back on abstention doctrine as a last effort to stonewall consideration of the due process claims' merits.  "Abstention is an exception to the general rule that 'federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant.'"  <u>Oglala Sioux Tribe v. Fleming</u>, 904 F.3d 603, 610 (8th Cir. 2018) (quoting <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 571 U.S. 69, 73 (2013)).  When employed, abstention serves "to preserve 'traditional principles of equity, comity, and federalism.'"  <u>Beavers v. Ark. State Bd. of Dental Exam'rs</u>, 151 F.3d 838, 840 (8th Cir. 1998) (quoting <u>Alleghany Corp. v. McCartney</u>, 896 F.2d 1139, 1142 (8th Cir. 1990)).  The particular limb of abstention doctrine the Defendants call upon derives from <u>Railroad Commission of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941).[7]  <u>Pullman</u> abstention "requires a federal court to refrain from exercising jurisdiction when the case involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on federal constitutional grounds."  <u>Burris v. Cobb</u>, 808 F.3d 386, 388 (8th Cir. 2015) (quoting <u>Moe v. Brookings Cty.</u>, 659 F.2d 880, 883 (8th Cir. 1981)).  Refining this principle, if "there is no ambiguity . . . the federal court should not abstain but should proceed to decide the federal constitutional claim."  <u>Moe</u>, 659 F.2d at 883 (citation omitted).

---

[7] The other two branches of abstention doctrine are not implicated.  <u>Younger</u> abstention requires an ongoing parallel state proceeding.  <u>See</u> <u>Geier v. Mo. Ethics Comm'n</u>, 715 F.3d 674, 678 (8th Cir. 2013).  <u>Burford</u> abstention applies when federal adjudication would interfere with a complex state regulatory scheme that requires specialized knowledge of state law.  <u>See</u> <u>Doe v. McCulloch</u>, 835 F.3d 785, 788 (8th Cir. 2016).

Abstention is inappropriate here because the dedication ordinance is unambiguous. The ordinance is perfectly clear in what it demands—uniform right of way dedication along section lines and roadways in exchange for plat approval. See W.C.Z.O. ch. 3, art. 24, § 4(A)(12). The Plaintiffs do not contend the County Commission should have construed the dedication ordinance in an alternate way that would skirt the constitutional issues. They assert that the ordinance itself, as plainly written, violates the Constitution. Further, there are no unsettled questions of state law because the Century Code overtly authorizes counties to condition plat approval on dedication of land to the public. See N.D. Cent. Code § 11-33.2-12. A reviewing state court would therefore face nothing more than the exact federal constitutional questions now before this Court.

Indeed, the Defendants have not even suggested how Ward County's dedication ordinance is unclear. They seem to argue that abstention is warranted simply because, first, a state court has not ruled on the Plaintiffs' claims and, second, land-use regulation is an arena best left to state courts. That is not enough to trigger Pullman abstention. No doubt, land-use regulation is an important state interest with which federal courts are normally hesitant to interfere. See Night Clubs, Inc. v. City of Fort Smith, 163 F.3d 475, 480 (8th Cir. 1998). But if a federal court were required to abstain whenever a state court could pass upon identical constitutional questions, abstention would become the near-universal rule rather than the carefully limited exception. Where, as here, a litigant lodges federal constitutional claims against an unambiguous state or local regulation, federal courts are bound to adhere to their "virtually unflagging obligation" to exercise otherwise proper jurisdiction. Spectra Commc'ns Grp., LLC v. City of Cameron, 806 F.3d 1113, 1121 (8th Cir. 2015) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). To abstain from deciding this case would spurn that obligation.

In sum, Pietsch and Irwin have standing in their individual capacities. WCFB and WCFU have standing to sue on behalf of their members. The procedural and substantive due process claims are ripe for review, and abstention is unwarranted. As a result, the Court possesses subject matter jurisdiction and will proceed to the merits.

## V.    DUE PROCESS CLAIMS

The Fourteenth Amendment familiarly forbids a state entity to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Amendment includes procedural and substantive components. Troxel v. Granville, 530 U.S. 57, 65 (2000). Where a property deprivation is alleged, both components require a plaintiff to establish a constitutionally protected property interest. Ellis v. City of Yankton, 69 F.3d 915, 917 (8th Cir. 1995). The two standards diverge from there. Procedural due process safeguards against deprivations of property without sufficient process. In re Kemp, 894 F.3d 900, 908 (8th Cir. 2018). Substantive due process wards off deprivations resulting from government intrusion into fundamental rights or arbitrary or irrational government action. See United States v. Fortney, 357 F.3d 818, 821 n.4 (8th Cir. 2004). The Court will initially address whether the Plaintiffs have a protected property interest and then discuss the particularities of the two due process components.

### A.    Protected Property Interest

North Dakota law establishes a protected interest in the ability to subdivide property, so the due process claims' first element is satisfied. "To have a constitutionally cognizable property interest in a right or a benefit, a person must have 'a legitimate claim of entitlement to it.'" Austell v. Sprenger, 690 F.3d 929, 935 (8th Cir. 2012) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by . . . an independent source such as state law.'" Cleveland Bd.

of Educ. v. Loudermill, 470 U.S. 532, 539 (1985) (quoting Roth, 408 U.S. at 577). When a state-created property interest exists, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." Town of Castle Rock v. Gonzales, 545 U.S. 748, 757 (2005) (emphasis and internal quotations omitted). To that end, "a state statute . . . can create a constitutionally protected property interest, first, when it contains particularized substantive standards that guide a decision maker and, second, when it limits the decision maker's discretion by using mandatory language (both requirements are necessary)." McGuire v. Indep. Sch. Dist. No. 833, 863 F.3d 1030, 1034 (8th Cir. 2017) (ellipses in original) (quoting Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir. 1999)) (in turn citing Jennings v. Lombardi, 70 F.3d 994, 995-96 (8th Cir. 1995)). The government entity's "discretion must be limited such that the [statute] 'mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met.'" Id. at 1035 (second alteration in original) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 462 (1989)).

Both parties overlook the origin of the protected property interest in this case. The Plaintiffs breeze past this element, cursorily claiming a protected property interest in the ability to subdivide property by asserting that the dedication ordinance infringes on an amorphous right to exclude others. They do not specifically identify how North Dakota law engenders a legitimate claim of entitlement to subdivide property. On the opposite end of the spectrum, the Defendants mangle the distinct concept of a protected property interest with the analysis for establishing a fundamental right for certain substantive due process claims.

Nonetheless, the Plaintiffs do identify, albeit in piecemeal fashion, the correct state-created property interest—the ability to subdivide property—and the correct provision of North Dakota law that anchors a legitimate claim of entitlement to that interest—North Dakota Century Code §

11-33.2-12. Set out in full above, § 11-33.2-12 provides more than a dozen painstakingly specific factors that a county commission must weigh before passing judgment on a plat application. If a county commission finds the statutory criteria satisfied, the plat "shall be finally approved." N.D. Cent. Code § 11-33.2-12. If not, "then the board of county commissioners shall disapprove the proposed plat." Id. The plat approval statute therefore contains precisely the particularized substantive standards and discretion-limiting language necessary to form the basis for a legitimate claim of entitlement to a state-created property interest.

Supporting this notion, the North Dakota Supreme Court has held, in accord with the statute's plain language, that a county commission has no duty to approve a plat application where one of the statutory factors is absent. See Dahm v. Stark Cty. Bd. of Cty. Comm'rs, 2013 ND 241, ¶ 19, 841 N.W.2d 416. The Dahm opinion also conspicuously left open whether a mandatory duty to approve a plat application is triggered if an applicant satisfies the statutory criteria in full. Id. ("Because [the Stark County Commission] found Dahm's application was at odds with [a statutory factor], it was under no duty to approve the request."). At the same time, the court framed the statute's requirements in mandatory, rather than permissive, terms. Id. ("In determining whether a plat shall be approved or disapproved, the County Board shall . . ."). Ultimately, the statute significantly limits a county commission's discretion to approve or disapprove a plat application through comprehensive substantive considerations while using mandatory language. The sole reason Pietsch and Irwin were prevented from creating their proposed outlots was their refusal to dedicate additional right of way to Ward County. The County Commission did not deny their plat applications based on any other statutory factors. Thus, the Court concludes that the Plaintiffs have a legitimate claim of entitlement, and therefore a protected property interest, in the ability to subdivide property under North Dakota Century Code § 11-33.2-12.

## B.    Procedural Due Process

To round out a procedural due process claim, the Plaintiffs must demonstrate that the Defendants effected a deprivation of their ability to subdivide property without constitutionally sufficient process.  See Jenner v. Nikolas, 828 F.3d 713, 716 (8th Cir. 2016).  "The essential requirements of due process . . . are notice and an opportunity to respond."  Cleveland Bd. of Educ., 470 U.S. at 546.  "Required procedures may vary according to the interests at stake, but the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Bus. Commc'ns, Inc. v. U.S. Dep't of Educ., 739 F.3d 374, 380 (8th Cir. 2013) (cleaned up).  Mirroring the general standard, "In the zoning context . . . procedural due process is afforded when the landowner has notice of the proposed government action and an opportunity to be heard."  Anderson v. Douglas Cty., 4 F.3d 574, 578 (8th Cir. 1993).

Attempting to brush aside this precedent, the Plaintiffs argue that two Fifth Amendment takings cases should moor the procedural due process standard here.  See Dolan v. City of Tigard, 512 U.S. 374 (1994); Nollan v. Cal. Coastal Comm'n, 483 U.S. 825 (1987).  To clarify, the Plaintiffs explicitly disavow that their amended complaint asserts any takings claims.  See Doc. No. 51, p. 3.  They instead contend that Nollan and Dolan set forth constitutional procedural protections that the dedication ordinance contravenes.

By way of explanation, the Takings Clause of the Fifth Amendment states, "nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  Nollan and Dolan grappled with a subset of takings jurisprudence pertaining to land-use exactions, which force a landowner to cede a property interest to the government without compensation as a condition for obtaining a development permit.  For exactions to avoid running afoul of the Takings Clause, a government entity must identify both an "essential nexus" and "rough proportionality"

between the perceived negative effect of the proposed development and the condition exacted. See Dolan, 512 U.S. at 391; Nollan, 483 U.S. at 837. Accomplishing this task requires a zoning authority to "make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." Dolan, 512 U.S. at 391.

The Plaintiffs posit that the Defendants violated their due process rights because Ward County's ordinance employs a one-size-fits-all approach that conditions plat approval on property dedication. They point out that the ordinance requires an affected landowner to apply for a variance and then demonstrate a hardship that the County can grant based only on physical characteristics of the property. That approach, they theorize, thwarts the mandate for an individualized determination of an "essential nexus" and "rough proportionality" between the transportation-related impact of a proposed outlot or subdivision plat and the County's actual need for right of way to support future road projects.

In their endeavor to extend exaction jurisprudence beyond the Takings Clause and into the realm of procedural due process, the Plaintiffs rely on Koontz v. St. Johns River Water Management District, 570 U.S. 595 (2013), a progeny of Nollan and Dolan. That reliance is misplaced. Koontz held that denial of a development permit for refusing to accede to a government demand for an unconstitutional exaction violates the Takings Clause. See Koontz, 570 U.S. at 607. Grounding this conclusion on the doctrine of unconstitutional conditions, the Supreme Court explained, "Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation." Id. at 607.

Although a violation of the Takings Clause, in a Koontz scenario, a landowner is merely denied a permit and does not forfeit any property. That means the Fifth Amendment's unique

remedy of just compensation for property taken is inaccessible. See id. at 608-09. Because of this distinction, "In cases where there is an excessive demand but no taking, whether money damages are available is not a question of federal constitutional law but of the cause of action—whether state or federal—on which the landowner relies." Id. at 609 (emphasis added). Extrapolating from that, the Plaintiffs contend Koontz opened the door to substituting due process claims for takings claims whenever an unconstitutional exaction results in the denial of a land-use permit. That interpretation is flagrantly overbroad.

To start, the Plaintiffs do not seek money damages, but rather an injunction barring further enforcement of the dedication ordinance either globally or particular to Pietsch and Irwin. As opposed to money damages, securing injunctive relief is independent of the Fifth Amendment's particular remedy of just compensation. That is because a completed taking is not necessary to enjoin a land-use regulation under the doctrine of unconstitutional conditions. Quite distinctly, all that is needed is a showing that the challenged demand for an exaction "impermissibly burden[s] the right not to have property taken without just compensation." Id. at 607 (emphasis added). As confirmation, Justice Kagan explained that a Koontz-type plaintiff "is entitled to have the improper condition removed" and may sue "to invalidate the purported demand as an unconstitutional condition" without resorting to anything other than the Takings Clause. Id. at 620, 634 (Kagan, J., dissenting) (agreeing with the majority on this issue). No question, where a plaintiff seeks monetary relief for an impermissible denial of a permit predicated on an unconstitutional exaction, tolerating an alternative remedy makes perfect sense because there is no taking and just compensation is therefore unavailable. But for injunctive relief, the analysis begins and ends with the Fifth Amendment. Permitting federal judges to strike down land-use regulations as violations

of procedural due process because they actually violate the Takings Clause is assuredly not a door the Supreme Court opened in Koontz.

True enough, due process is a "flexible" concept. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). But adopting the Plaintiffs' contorted position would break—not bend—procedural due process protection. See Lind v. Midland Funding, L.L.C., 688 F.3d 402, 405 (8th Cir. 2012) ("Despite this flexibility, for more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.") (cleaned up). Nollan and Dolan were decided more than 25 years ago, and Koontz nearly seven years ago. Despite the length of time that has elapsed, the Plaintiffs do not cite to, and the Court has yet to discover, a single case that supports their novel theory. Underscoring this point, the Supreme Court has expressly rejected, on multiple occasions, attempts to "recast in 'procedural due process terms'" otherwise substantive challenges to regulation. Reno v. Flores, 507 U.S. 292, 308 (1993); see also Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 7-8 (2003); Michael H. v. Gerald D., 491 U.S. 110, 120-21 (1989). Nollan and Dolan articulate substantive standards for adjudicating takings claims. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 546 (2005). Those cases plainly have nothing to do with the procedure a landowner is entitled to for property deprivations in the land-use regulation context. Put simply, if the Plaintiffs believe the dedication ordinance is invalid because it bucks the Fifth Amendment takings standards handed down in Nollan and Dolan, then they should have pursued a Fifth Amendment takings challenge based on Nollan and Dolan.

Viewing Pietsch and Irwin's as-applied procedural due process claims through the appropriate constitutional lens, the Defendants provided adequate notice of the dedication requirement and an opportunity to be heard. Both Plaintiffs had actual notice that their property

was subject to dedication throughout the plat application process. Beyond notice, Pietsch and Irwin were each afforded opportunities to participate in hearings at the Planning Commission and County Commission levels. Even though the County Commission was not bound to consider the economic implications of the dedication requirement when deliberating on Pietsch and Irwin's plat applications, the record indicates those factors would have been considered if presented. Doc. No. 44-5 at 112:9-18. Procedural due process mandates a meaningful opportunity to be heard, not a guarantee of a favorable outcome. Pietsch and Irwin knew what the dedication ordinance required and had ample opportunity to present their plat applications and variance requests. Their as-applied claims accordingly fail. Because the dedication ordinance afforded sufficient process to Pietsch and Irwin, the ordinance is not "unconstitutional in all its applications." Bucklew, 139 S. Ct. at 1127. For that reason, all four Plaintiffs' facial procedural due process claims falter as well.

## C. Substantive Due Process

The substantive due process claims fare no better. "[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases." Novotny v. Tripp Cty., 664 F.3d 1173, 1178 (8th Cir. 2011) (alteration in original) (quoting Myers v. Scott Cty., 868 F.2d 1017, 1019 (8th Cir. 1989)). Substantive due process insulates constitutionally protected property interests and fundamental rights from government conduct that "shocks the conscience." Gallagher v. Magner, 619 F.3d 823, 840 (8th Cir. 2010) (citations and internal quotation marks omitted) (discussing constitutionally protected property interests); Norris v. Engles, 494 F.3d 634, 638 (8th Cir. 2007) (discussing fundamental rights). As previously established, the Plaintiffs have a constitutionally protected interest in the ability to subdivide property under North Dakota law.

The Eighth Circuit deploys two separate standards for facial and as-applied substantive due process challenges to property deprivations resulting from land-use regulations. See WMX Techs.,

33

Inc. v. Gasconade Cty, 105 F.3d 1195, 1198 n.1 (8th Cir. 1997); Bellino Fireworks, Inc. v. City of Ankeny, 332 F. Supp. 3d 1071, 1095-96 (S.D. Iowa 2018); Duffner v. City of St. Peters, Case No. 4:16-CV-01971-JAR, 2018 WL 1519378, at *5-6 (E.D. Mo. Mar. 28, 2018). For as-applied claims, a plaintiff "must demonstrate the 'government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law.'" Koscielski v. City of Minneapolis, 435 F.3d 898, 902 (8th Cir. 2006) (ellipses in original) (quoting Anderson, 4 F.3d at 577). A valid facial challenge, meanwhile, requires a plaintiff to prove that the land-use regulation itself "is arbitrary, capricious and not rationally related to a legitimate public purpose." WMX Techs., Inc., 105 F.3d at 1198-99 (citing Pennell v. City of San Jose, 485 U.S. 1, 11 (1988)).

The Defendants lob two unpersuasive threshold arguments that can be dispensed with up front. They first make the blanket assertion that substantive due process claims always require the invasion of a fundamental right. Not so. After all, the Fourteenth Amendment Due Process Clause does not end at the word "liberty." Deprivations of protected property interests routinely sustain substantive due process claims. See, e.g., Gallagher, 619 F.3d at 840; Bituminous Materials, Inc. v. Rice Cty., 126 F.3d 1068, 1070 (8th Cir. 1997).

Their next contention is that the Plaintiffs' substantive due process claims fail because they are in substance takings claims. This argument lacks merit, too. Unlike the procedural due process claims, the Plaintiffs' substantive due process arguments do not hinge on Nollan and Dolan—or any other takings jurisprudence for that matter. Were that the case, then the Takings Clause would control as the "explicit textual source" for the claims, and the "more generalized notion of 'substantive due process'" would necessarily fade away. Graham v. Connor, 490 U.S. 386, 395 (1989). But in reality, the Plaintiffs' substantive due process claims assert only that the dedication ordinance is irrational and unrelated to a legitimate government purpose. And the Supreme Court

has made clear that apart from a takings challenge, a land-use "regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause." Lingle, 544 U.S. at 542 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)); see also id. at 548 (Kennedy, J., concurring). Substantive due process claims predicated on the arbitrary or irrational deprivation of a protected property interest are entirely appropriate.

Whether those claims succeed in this case is a different story. Pietsch and Irwin's as-applied claims come up well short. Truly irrational government action "bear[s] no relationship whatever to the merits of the pending matter." Lemke v. Cass Cty., 846 F.2d 469, 472 (8th Cir. 1987) (en banc) (per curiam) (Arnold, J., concurring). Posited examples include making zoning decisions by coin toss or applying an ordinance exclusively to those whose names begin with a letter in the first half of the alphabet. See id.; Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992). Here, the County Commission did not act in a truly irrational manner when denying Pietsch and Irwin's plat applications—it simply followed the letter of the dedication ordinance. Pietsch and Irwin wanted to create outlots. Their properties abutted existing roadways, so the ordinance called for them to dedicate right of way. They attempted to avoid dedicating that right of way by applying for variances as the ordinance allowed. The County Commission considered their plat applications and accompanying variance requests, eventually determining Pietsch's property did not meet the hardship definition required for a variance and the Trust's property did not satisfy the County's right of way requirements. Because of those deficiencies, the County Commission denied Pietsch and Irwin's plat applications.

From start to finish, the County Commission's decisionmaking related exclusively to the merits of Pietsch and Irwin's plat applications. There was no coin flipping or alphabetizing, no blatant personal animus, and no other inappropriately irrelevant decisionmaking taking place here.

Pietsch's contention that Ward County had already decided to reconstruct the road adjacent to his property and Irwin's inverse assertion that the County had no plans to improve the gravel road bordering his proposed outlot therefore miss the mark. Those arguments go to the dedication ordinance's alleged structural deficiencies, not the County Commission's application of the ordinance under the circumstances. WMX Techs., Inc., 105 F.3d at 1198 n.1 ("When one makes an 'as applied' challenge, he or she is attacking only the decision that applied the ordinance to his or her property, not the ordinance in general."). The dedication ordinance does not mandate an inquiry into whether Ward County needs right of way for future road construction projects. So the County Commission cannot be faulted for failing to apply a nonexistent provision of the ordinance. The bottom line is that the County Commission looked at the dedication ordinance, then looked at the variance applications, and arrived at the conclusion that the two were incompatible. That is not truly irrational government action. The as-applied claims end there.

The heart of the Plaintiffs' substantive due process theory, however, assails the dedication ordinance as arbitrary, irrational, and unrelated to a legitimate government purpose on its face. Because an alternative standard governs facial challenges in this context, separate analysis is necessary. See Bellino Fireworks, Inc., 332 F. Supp. 3d at 1095-96; Duffner, 2018 WL 1519378, at *5-6. The burden rests with the Plaintiffs to prove that either (1) the dedication ordinance serves no legitimate government purpose or (2) the dedication ordinance is not rationally related to a legitimate purpose. See Karsjens v. Piper, 845 F.3d 394, 407-08 (8th Cir. 2017). The Plaintiffs attack the dedication ordinance from both angles.

Addressing the first prong, "Legislative bodies are given broad latitude in their legislative determinations, 'and it is not the province of the courts to monitor the inputs into each legislative decision.'" WMX Techs., Inc., 105 F.3d at 1201. To prevail on this ground, the Plaintiffs must

negate "every conceivable basis which might support" the dedication ordinance.  FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993) (citations omitted).  The Plaintiffs begin by correctly noting that a regulation's "true" purpose is irrelevant when determining if that regulation is rooted in a legitimate government purpose.  See WMX Techs, Inc., 105 F.3d at 1201.  But they then conduct an about face and proceed to attack what they allege to be the dedication ordinance's singular true purpose.  Without pointing to one iota of supporting evidence from the record, they assert that the ordinance is intended to create a land bank that allows Ward County to dodge eminent domain proceedings.  Merely speculating as to what the Plaintiffs believe the ordinance's purpose to be is patently not enough to carry the burden of proof.

Even if Ward County had enacted the dedication ordinance to bypass eminent domain, that would not matter because the ordinance is conceivably designed to provide for public roads, a government interest that the Plaintiffs concede is legitimate.  Doc. No. 44, p. 29.  Countering the Plaintiffs' conjecture is concrete evidence that the County Commission passed the dedication ordinance in response to local engineers and developers expressing concern that the statutory 33-foot right of way insufficiently accommodated the labor and equipment demands of modern road projects.  Doc. No. 44-5 at 60:11-64:15.  The Plaintiffs try to constrict this apparent purpose by claiming the dedication ordinance cannot provide for the creation of roads because it applies to property bordering preexisting roadways.  Though creative, this argument ignores that maintaining and rebuilding roads to allow for their safe operation and use is an equally plausible reason to acquire right of way.  The construction and operation of public roads yields a conceivable legitimate government purpose to sustain the dedication ordinance.

Furthermore, the ordinance is rationally related to providing for public roads.  Authorizing the acquisition of right of way where roads exist or might be built in the future is clearly related to

the dedication ordinance's conceivable purpose of facilitating road construction and maintenance. Does the ordinance sweep more broadly than necessary? Almost certainly. The County will not always have an immediate need to construct or rebuild a road every time the ordinance requires a landowner to dedicate property. But on rational basis review, an ordinance need not be narrowly tailored to the task at hand. See Heller v. Doe ex rel. Doe, 509 U.S. 312, 321 (1993) ("[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A [regulation] does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality.") (citations and internal quotation marks omitted). The Plaintiffs have failed to demonstrate that there is no rational relationship between the dedication ordinance and the provision of public roads. The facial substantive due process claims likewise fail as a result.

The chief difficulty with substantive due process claims like this one is that they call upon a court to substitute its judgment for that of duly elected officials. The solution to the Plaintiffs' problems is as much political as it is legal, if not more so. The citizens of Ward County can elect leaders to change the dedication ordinance. Absent the kind of "truly egregious and extraordinary" circumstances that trigger the protections of the Constitution, this Court will not.

## VI.   CONCLUSION

This opinion is far from a ringing endorsement of Ward County's dedication ordinance. Without question, counties possess the authority to take private property to provide for public roads. But doing so via legislative backdoor in a manner that avoids compensating landowners appears to infringe on a right enshrined in our Constitution. That right is not at issue today. The dedication ordinance is not irrational, nor does it deprive effected landowners of notice and an opportunity to be heard. Due process does not fit the bill.

Accordingly, no genuine dispute of material fact remains, and the Defendants are entitled to judgment as a matter of law.  The Court has reviewed the entire record, the parties' filings, and the relevant legal authority.  For the reasons above, the Defendants' motion for summary judgment (Doc. No. 40) is **GRANTED**.  The Plaintiffs' motion (Doc. No. 42) is **DENIED**.  The complaint against the Defendants is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 10th day of March, 2020.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court